OPINION
{¶ 1} Defendant, Anthony Heath, appeals from his conviction and sentence for aggravated burglary, which were entered on jury's verdicts after a full trial.
 {¶ 2} The evidence presented by the State at trial demonstrates that on February 20, 2002, Kimberly Brown and her two daughters were living at 24 E. Mumma Avenue in Dayton. Defendant Heath is Brown's former boyfriend and the father of one of Brown's daughters. Defendant was not then living at 24 E. Mumma Avenue with Brown, and did not have a key to that residence.
 {¶ 3} At approximately 2:00 a.m. on that date, Defendant came to Brown's residence and entered without Brown's permission by crawling through a window in the laundry room. The window had been closed before Defendant's entry. Ms. Brown caught Defendant entering her home. She told him to leave, but Defendant refused.
 {¶ 4} When Ms. Brown attempted to call police, Defendant took Brown's cell phone away. Tracey Carter, a mutual friend of both Ms. Brown and Defendant, arrived shortly after to pick up her son. Ms. Brown asked Carter to call police because Defendant had broken into her home and refused to leave. Carter did not immediately call police but instead talked to Defendant, telling him he should leave. Defendant indicated that he was there only to pick up a box of clothes stored in the basement.
 {¶ 5} Defendant went into the basement but emerged without the box of clothes. Defendant and Ms. Brown began to argue and call each other names. At one point, Defendant used a towel to wipe off the window sill in the laundry room and the handrail leading into the basement. The argument between Defendant and Ms. Brown became more heated, with Brown telling Defendant several more times to leave.
 {¶ 6} Brown blocked Defendant's path when Defendant attempted to go upstairs where Brown's children were sleeping. The verbal argument turned into a physical altercation, with pushing and shoving. Defendant struck Brown in the face and mouth with his fist, and then pushed her down. When Brown fell and hit the floor, she heard her arm snap. Brown immediately felt pain in her left arm and elbow.
 {¶ 7} Ms. Carter had by this time called police. Defendant went upstairs and Ms. Brown followed him. Ms. Brown watched Defendant enter her bedroom and take several gold chains from her nightstand and put them in his pocket. Defendant also took five one dollars bills out of the nightstand drawer.
 {¶ 8} When Defendant and Ms. Brown came back downstairs, Ms. Carter told them she had called police. Defendant walked to the front door and began to go outside. He came back inside when he saw police arrive. Police entered the residence and arrested Defendant.
 {¶ 9} Police recovered Ms. Brown's gold chains and five one dollar bills from Defendant's pocket, when Defendant was booked into the jail. Ms. Brown was taken by medics to Miami Valley Hospital, where her left arm was put into a sling that she wore for one and one-half weeks. Police interviewed Ms. Brown at the hospital and took photographs of her swollen face and lip.
 {¶ 10} Defendant was indicted on one count of aggravated burglary. R.C. 2911.11(A)(1). The case proceeded to a jury trial. Ms. Brown and Ms. Carter testified to the facts discussed above. Defendant testified that he had permission to enter Ms. Brown's residence because she let him in the front door. Defendant also testified that he was not trespassing because he lived there. Defendant admitted, however, that he did not leave when Ms. Brown ordered him to do so, and that they had a physical altercation. The jury found Defendant guilty of aggravated burglary. The trial court sentenced him to five years imprisonment.
 {¶ 11} Defendant has timely appealed to this court from his conviction and sentence. Defendant presents a single assignment of error, which is supported by two issues he also presents. The issues present discrete questions of law. Therefore, we shall consider each as an assignment of error, and for clarity of discussion we will address the second issue first in order.
 SECOND ASSIGNMENT OF ERROR {¶ 12} "The trial court's finding that defendant-appellant was guilty of aggravated burglary was not sufficiently supported by the evidence presented."
 {¶ 13} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 14} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 15} Defendant was found guilty of violating R.C. 2911.11(A)(1), which provides:
 {¶ 16} "No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 {¶ 17} "1. The offender inflicts, or attempts or threatens to inflict physical harm on another."
 {¶ 18} Defendant argues that the evidence is insufficient to demonstrate that he used force, stealth or deception to enter Ms. Brown's residence, or that he trespassed therein. We disagree.
 {¶ 19} Ms. Brown's testimony, if believed, is sufficient to establish each and every element of aggravated burglary, including trespass, and sufficient to convince the average mind of Defendant's guilt beyond a reasonable doubt. Ms. Brown testified that she saw Defendant enter her home, without her permission, by crawling through a closed window in the laundry room. That evidence is sufficient to support a reasonable inference that Defendant opened that window and thereby used "force" to enter and trespass in Ms. Brown's home. See: State v. Ford
(May 17, 1996), Montgomery App. No. 15374. It also demonstrates the alternative of "stealth," which is likewise charged in Heath's indictment.
 {¶ 20} Defendant's contention that the evidence fails to prove that he entered Brown's home by force or trespassed therein, is based upon the conflict in the evidence created by his own testimony at trial that he knocked on the front door and Ms. Brown let him in, and that he was not a trespasser because he lived there at that time. There is a conflict, clearly. However, the credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. State v. DeHass (1967), 10 Ohio St.2d 230. The jury was entitled to believe Ms. Brown's version of the events and to reject Defendant's version.
 {¶ 21} Even assuming that Ms. Brown allowed Defendant to enter her home as he alleges, both Ms. Brown and Tracey Carter testified that Defendant did not live there, and that Ms. Brown repeatedly ordered Defendant to leave, and that he refused to leave. Defendant admitted at trial that he did not leave when Ms. Brown ordered him to, and that when he went to her home that night he had been trying to contact Brown for some time to "get back in the house." By remaining in Ms. Brown's home without privilege to do so and after being ordered to leave, Defendant was in the status of a trespasser. R.C. 2911.21(A)(1). Defendant's use of force against Ms. Brown to resist her demands to leave and, instead, remain in her home is amply demonstrated by the physical altercation between Defendant and Ms. Brown.
 {¶ 22} Viewing the evidence in this case in a light most favorable to the State, a rational trier of facts could find all of the essential elements of aggravated burglary proven beyond a reasonable doubt. Defendant's conviction is supported by legally sufficient evidence.
 {¶ 23} This assignment of error is overruled.
 FIRST ASSIGNMENT OF ERROR {¶ 24} "The trial court's decision to convict defendant-appellant of aggravated burglary was against the manifest weight of the evidence."
 {¶ 25} A weight of the evidence argument challenges the believability of the evidence; which of the competing inferences suggested by the evidence is more believable or persuasive. State v.Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v.Martin (1983), 20 Ohio App.3d 172, 175:
 {¶ 26} "(t)he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 27} An appellant who argues that a finding of liability against him, whether civil or criminal, should be reversed as against the manifest weight of the evidence bears the burden of persuasion with respect to that contention. Defendant argues that Ms. Brown's testimony is not believable because it was shown at trial that Brown previously filed a false police report claiming Defendant had stolen her car, when in fact she loaned it to him and he simply did not return it on time. Defendant also points to his own testimony at trial which, if believed, indicates that he did not enter Brown's home by force. Rather, Defendant knocked on the front door and Brown let him enter. Moreover, Defendant testified that he did not trespass in the home because he began living with Brown at the Mumma Avenue residence in January, 2002, and the Dayton police, the Bureau of Motor Vehicles, and Defendant's parole officer all had that residence listed as his address. Further, other witnesses testified that they had dropped Defendant off there on several earlier occasions the month before.
 {¶ 28} Whether Ms. Brown had filed a false police report bears on her credibility as a witness, but it doesn't make her version of the events incredible. Ms. Brown testified that Defendant entered through the laundry room window. Defendant testified that Ms. Brown admitted him through the front door. Ms. Brown's version is supported by evidence that Defendant later wiped off the window sill, from which a jury reasonably could infer that he had entered through the window and attempted to destroy any physical evidence showing that he did.
 {¶ 29} Ms. Brown contradicted Defendant's claim that he then resided in her home. Her version is supported by the fact that he attempted to retrieve a box of his clothes from the basement, at about 2:00 a.m., which is inconsistent with Defendant's claim that he lived there at the time. Other evidence showing that Defendant had stayed at Ms. Brown's home the month before doesn't show that he had her permission to enter on that occasion. The related or resulting felonies of the assault of Ms. Brown and theft of her property is not in dispute.
 {¶ 30} In resolving conflicts in the evidence the trier of facts must determine the credibility of the witnesses and the weight to be given to their testimony. In that regard this court stated in State v.Lawson (August 22, 1997), Montgomery App. No. 16288:
 {¶ 31} "(b)ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 32} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict.State v. Bradley (October 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 33} By its guilty verdict the jury obviously chose to believe Ms. Brown rather than Defendant, which it was entitled to do. In reviewing this record as a whole we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has occurred. Defendant's conviction is not against the manifest weight of the evidence.
 {¶ 34} This assignment of error is overruled. The judgment of the trial court will be affirmed.
WOLFF, J. and YOUNG, J., concur.